## QUO WARRANTO AGAINST A MUTUAL BURIAL ASSOCIATION.

[Circuit Court of Lucas County.]

STATE OF OHIO, EX REL LYMAN W. WACHENHEIMER, PROSECUTING ATTORNEY FOR LUCAS COUNTY, OHIO, v. THE TOLEDO & LUCAS COUNTY BURIAL ASSOCIATION.

Decided, June 9, 1906.

*Corporations not for Profit—Existence of, Justified, When—Irregularities in Organization—By-Laws—Proper Procedure in Adoption of—Other Preliminaries of Organization—Annual Meetings and Annual Elections—Classification of Insurance Companies, Beneficial Organizations and Mutual Burial Societies—Subsidiary and Controlled Organizations—Minors Incompetent to Become Members—Sections 3631a, 3240, 3250, 3251 and 3252.*

1. Where the incorporation of an organization for a particular purpose is justified by expressed sanction of the Legislature, and the sanction is not unconstitutional, the courts are not at liberty to dissolve the organization on the ground that its purpose is not beneficial to its members or to the public.

2. Section 3631a is not unconstitutional in that it confers upon an organization of the character of a mutual burial association, whether it be regarded as an insurance company or a beneficial society, rights and privileges differing from those bestowed upon other associations doing a similar business.

3. Where such an organization is not subsidiary to or controlled by a corporation for profit, the fact that some of its officers, directors and members are also officers, directors and stockholders of a corporation for profit, does not constitute an offense against the law or call for a revocation of its charter.

4. Irregularities and omissions of statutory requirements, in an attempt made in good faith to organize a corporation not for profit, are not a sufficient basis for a judgment of ouster, where the irregularities and omissions are no more vital than occurred in this case; but the corporation will be recognized as a *de facto* organization and its board of directors as a *de facto* board, and a decree will be granted requiring that a legal organization be effected.

5. Infants can not become members of such an organization; its purposes can not be made to include a form of benevolence not au-

thorized by statute; it can not provide for assessments which are not based on mutuality as to benefits; and only duly qualified members can participate in the election of its trustees and officers.

PARKER, J.; HAYNES, J., and WILDMAN, J., concur.

This is a proceeding in quo warranto, the purpose being to oust and exclude the defendant from the exercise of corporate rights, privileges, powers and franchises, for the reason, it is charged, that it has forfeited such rights.

The petition sets forth the incorporation of the association. an attempt at organization, the rules or so-called by-laws under which it has been operating, and then follow the charges of acts which, it is claimed, result or should result, in a forfeiture of its franchise. The whole matter is set forth in detail in the petition as follows:

Now comes Lyman W. Wachenheimer and represents to the court that he is the duly elected, qualified and acting prosecuting attorney in and for Lucas county, in the state of Ohio; that for said state in this behalf he comes here before the Judges of the Circuit Court of and for Lucas County in said state, at the January Term, 1906, and on the eighth day of May, 1906, and gives the court to understand and be informed:

That the defendant, the Toledo & Lucas County Burial Association, is a corporation, incorporated under the general corporate laws of the state of Ohio, and has been such since the month of January, 1905, and is located, and has its principal place of business at the city of Toledo, county of Lucas, state of Ohio; that said defendant became and is so incorporated, as aforesaid, as a corporation not for profit, and for the purpose of providing for the payment of the funeral expenses of the members of the association by assessments upon such members, but for no other purpose whatsoever.

Said defendant, since its incorporation, has been and still is claiming and pretending to do business under the plan of by-laws and contracts set forth and made a part hereof as follows:

### BY-LAWS.

#### NAME.

##### ARTICLE I.—NAME.

The name of this association shall be the Toledo & Lucas County Burial Association.

### ARTICLE II.—OBJECT.

The purpose for which this association is formed is to provide for the payment of the funeral expenses of the members of this association by assessments upon such members.

### ARTICLE III.—MEETINGS.

The annual meeting of members shall be held at the rooms of the association in Toledo, Ohio, on the second Monday in January in each year.

Special meetings may be called by the president upon twenty-four hours' previous notice by publication in some newspaper published in Toledo, Ohio. At all meetings a majority of the members shall constitute a quorum.

### ARTICLE IV.—OFFICERS.

The officers of this association shall be a president, vice-president, secretary, treasurer and fifteen trustees, who, with the exception of the secretary, shall serve without compensation. They shall be elected for one year but serve until their successors are elected and qualified. All elections shall be by ballot and a majority of all the votes cast shall be necessary to a choice.

### ARTICLE V.—DUTIES OF OFFICERS.

#### Duties of President.

It shall be the duty of the president to preside at all meetings, sign the records thereof, and in general to perform all the duties incident to the office.

#### Duties of Vice-President.

It shall be the duty of the vice-president to perform all the duties of the president during the absence or disability of the latter.

#### Duties of Secretary.

It shall be the duty of the secretary to keep an accurate record of all acts and proceedings of the members and trustees, and in general to do all things and acts usually devolving upon such officer.

#### Duties of Treasurer.

It shall be the duty of the treasurer to keep an accurate record of all moneys received and expended by him; to deliver such records and moneys to his successor upon the expiration of his term of office.

### ARTICLE VI.—AMENDMENTS.

These regulations may be amended by two-third vote of the members present.

### ARTICLE VII.—DUTIES OF TRUSTEES.

It shall be the duty of the trustees to exercise a general supervision

over the business of the association and they shall elect all officers of the association, which election shall be by ballot. Eight trustees shall constitute a quorum.

### ARTICLE VIII.—MEMBERSHIP.

Membership shall be divided into three classes, viz: Class A, Class B, Class C.

#### Class A.

Shall include persons in good health between the ages of ten years and sixty years.

#### Class B.

Shall include children in good health between the ages of one year and ten years.

#### Class C.

Shall include persons over sixty years of age.

### ARTICLE IX.—INITIATION FEES AND DUES.

The initiation fee for Class A shall be ten cents, and dues shall be eighteen cents per month, payable on the first day of each month, and unless paid on the first day of each month said member shall be in arrears.

The initiation fee for Class B shall be eighteen cents, and there shall be no dues paid in this class. It is necessary, however, that parents or guardian be members of Class A before children are entitled to membership under Class B.

The initiation fee for Class C shall be eighteen cents, and there shall be no dues paid in this class.

### ARTICLE X.—FUNERAL BENEFITS.

Members of Class A in good standing at time of death shall be provided a funeral consisting of embalming, professional service, casket and outside box, suit or robe and funeral car, to the value of one hundred dollars.

Members of Class B whose parents or guardians are in good standing in Class A shall at death be entitled to a funeral to the value of fifty dollars as shown in Class A.

Members of Class C shall at death be entitled to a discount of twenty per cent. on their funeral bill.

### ARTICLE XI.

All funerals must be conducted by the association undertaker.

### ARTICLE XII.—SUSPENSIONS.

Any member of Class A owing one month's assessment and the same being in arrears for fifteen days shall, "together with any member of Class B contracted for by said member," be suspended.

### ARTICLE XIII.—WITHDRAWALS.

Any member of Class A desiring to withdraw from the association may upon application to the secretary receive a receipt for the full amount paid the association for dues, which amount may be applied on the payment of the member's funeral, provided said funeral is conducted by the association undertaker.

### ARTICLE XIV.

Members removing their residence outside of the county of Lucas in the state of Ohio, thereby forfeit their membership.

### ARTICLE XV.

Three cents of the monthly dues paid by each member together with ten cents of the initiation fee shall be applied to the operating expenses of the association.

### ARTICLE XVI.

In the event of the death of a member occurring outside of Lucas county, this association will take charge of the remains on arrival in Toledo and will be responsible only for expenses thereafter incurred to the extent of its liability as provided for in Article X.

Plaintiff further says that said defendant since its said organization has been and still is engaged in carrying on and transacting the business of insurance by soliciting members to its association, from all persons over one year of age, and said members have been and still are procured by entering into contracts with the proposed member according to the particular class in which such persons because of his or her age under said by-laws belongs. Said contracts for said members respectively have been and are for said Classes A, B and C, respectively, as follows:

### COPIES OF CONTRACTS.

#### Class A.

Contracts between ———— and the Toledo & Lucas County Burial Association for and in consideration of the payment by ———— to the Toledo & Lucas County Burial Association, of ———— initiation fee, the receipt of which is hereby acknowledged, and of ———— assessments to be hereafter paid, as provided by the by-laws of this association. The Toledo & Lucas County Burial Association agrees, on the death of ———— to provide a funeral costing $100, as provided in the by-laws of the association.

#### Class B.

Contract between ———— and the Toledo & Lucas County Burial Association for and in consideration of the payment by ———— to

the Toledo & Lucas County Burial Association of the initiation fee, the receipt of which is hereby acknowledged. The Toledo & Lucas County Burial Association agrees to 'furnish in the event of the death of ———— the ———— of ———— before —,—— arrives at the age of ten years, a funeral to cost $50, as provided by the by-laws of the association.

### Class C.

Contract between ———— and the Toledo & Lucas County Burial Association for and in consideration of the payment by ———— to the Toledo & Lucas County Burial Association of the initiation fee, the receipt of which is hereby acknowledged. The Toledo & Lucas County Burial Association agrees that on the death of ————, ———— funeral bill shall be subject to a discount of twenty per cent., provided that funeral is conducted by the association undertaker.

Plaintiff further says that ever since its incorporation said defendant has continuously within this state, to-wit, in the county of Lucas, offended against the laws of this state, under which it was incorporated and created, grossly abused and misused its corporate authority, franchises and privileges, and unlawfully assumed, usurped and exercised franchises and privileges not granted to it by law, and in contravention of law, and especially in the following particulars, to-wit:

First.  The original incorporators of defendant, five in number, upon its incorporation elected one of their number, John J. Murphy, a trustee of defendant, and elected or appointed fourteen other persons trustees, fifteen in all, but your relator is informed that none of these persons have ever been members of defendant. A number of said so-called trustees thus elected, the exact number being to your relator unknown, have never given their consent to such election nor have they ever taken any part in the management of the affairs of defendants, but on the contrary they have requested that their names be dropped from the list of officers on the books and literature of defendant. Less than half of said persons, so-called trustees, the exact number being to your relator unknown, have, since said incorporation, transacted the entire business of defendant, independently of the knowledge or will of its members, and this notwithstanding the membership of defendant since its incorporation has been large in number.  Upon the incorporation of defendant many

persons became members thereof under the forms of contracts set forth above and their number have reached several thousand from time to time, but they have been allowed no voice in the election of trustees or in the management of the affairs of the defendant, nor have they ever participated in either of the same. No regulations have ever been adopted by the members of defendant nor have they ever taken any steps whatever toward the organization of defendant under the law or otherwise.

Upon the incorporation of defendant said trustees so managing its affairs as aforesaid, immediately attempted to adopt the so-called code of by-laws set out above herein, and they have pretended since then to manage the affairs of defendant thereunder and in accordance therewith and the law, but in fact said affairs have not been carried on.

1. A number more than half of the so-called trustees never received a notice of any meeting of the members or trustees, nor have they ever attended any such meeting, or participated in the election of officers or any other business of the association.

2. There has never been a meeting of the members of the association nor have they ever received any notice to attend any such a meeting from any one.

3. No officers or trustees of the association have ever been elected by the members.

4. No reports of the condition or affairs of defendant has ever been made to the members, or any of them.

5. No accounting for any money paid into the treasury of the association or otherwise has ever been made to the members thereof. Large amounts of money have been collected by said active trustees for defendant since the incorporation, but the exact amount is to relator unknown.

6. Said by-laws, so called, were adopted by less than half of said alleged trustees and without notice to the others of said fifteen persons, and those so adopting the same have assumed the management and control of the business and affairs of defendant, independent of and without the knowledge of said other trustees and members.

7. If any changes have been made in said by-laws since the incorporation of defendant or any new trustees elected, both

have been done by said persons so actively engaged in controlling affairs of defendant, and this for the purpose of perpetuating themselves in such office and in such control.

Second.    Defendant was so incorporated and has been and still is operated with and for the profit and benefit of said active trustees and their agents and the Toledo Undertaking Company, which company is a corporation incorporated and organized for profit on or about October 24, 1904, under the laws of Ohio, and with its place of business at Toledo, Ohio.

The stockholders and directors of said undertaking company promoted and organized defendant, and its directors are also the active trustees of defendant, managing and controlling the business and affairs of defendant, independently of the members of defendant as set forth above herein.    Said undertaking company is the "official undertaker" of defendant and is the agency through which defendant operates · in furnishing its funerals for members and this is done by a pretended contract between the two organizations by the terms of which those operating defendant agree to and do pay said undertaking company and, through it, back to themselves, one hundred ($100.00) dollars for each funeral of members of Class A, and fifty ($50.00) dollars for each funeral of members in Class B. Funerals of members in Class C are furnished at a discount of twenty per cent. from whatever price the undertaking company and the active trustees of defendant see fit to place on whatever sort of a funeral the two organizations elect to give the deceased members of this class, and in all classes the funeral must be furnished by said undertaking company.

Defendant procures its members by writing with the person solicited a contract for the particular class, A, B or C, to which the proposed member, because of age, belongs under said by-laws, and on the form for said classes, respectively, as set forth above herein.    The members in Class A pay an initiation fee of ten cents and premiums or dues of eighteen cents per month from initiation until death, and in consideration of the performance thereof defendant is to provide a funeral costing $100.00 as provided in said pretended by-laws.

The members in Class B, persons from one to ten years of age, ·are furnished a funeral "to cost $50.00," as provided by said

pretended by-laws, under a contract between defendant and some third person by which the latter pays an initiation fee of eighteen cents; but no premium or dues are charged, though this member's parent or guardian must be members of Clas A.

Membership of Class C, persons over sixty years of age, is procured by writing with some one a contract under which some one pays defendant an initiation fee of eighteen cents for the member, but no premiums or dues are thereafter required or paid, and in consideration thereof this member shall at death be entitled to a discount of twenty per cent. on the funeral bill, if the funeral is furnished by the "association undertaker."

All these contracts which are complied with at all by defendant are discharged through its association undertaker and agent, the Toledo Undertaking Company, by furnishing the funeral referred to in the contract of membership and consisting of service, goods, wares and merchandise of such kind and quality as the common officers of these two organizations see fit to give. No money is paid to the estate or relatives or next kin of the deceased to furnish funeral or for any other purpose.

Third. Defendant does not collect assessments from its members surviving any deceased member in amounts simply sufficient to pay the expenses of the funeral of such deceased member, or in any other amounts, but the initiation fees and monthly premiums mentioned above for the respective classes are collected regularly whether necessary to meet the expense of the particular funeral in question or not, and relator says that defendant's income from initiation fees and monthly premiums from its members is largely in excess of the cost and expense incurred by it in furnishing its funerals and maintaining its association, and that since its incorporation defendant has realized large profits from its business, to-wit, several thousand dollars. Defendant has in fact never paid the expense of any funeral in money, but in all cases has, in violation of the rights and powers, simply furnished said funerals in service, goods, wares and merchandise of its own arbitrary selection.

Fourth. Defendant has been and is making contracts with third persons for the benefit of persons who desire to become

members and also for other persons without the knowledge of such persons in whose behalf the contract is written, and defendant has been and is making many contracts with persons sick, old and infirm and near death and persons affected with incurable disease and this for advertising purposes to turn surplus money over to said active trustees through the treasury of the said undertaking company, and in that way to the profit of the common officers and agents of these two organizations, in that in these and in every funeral furnished the service, goods, wares and merchandise furnished for each funeral, together with the proportionate amount of running expense of defendant, is always of a cost much less than one hundred dollars for Class A, and less than fifty dollars for Class B, and in fact in no instance has said cost for any funeral been in excess of forty ($40.00) dollars; certain qualities of the service and materials mentioned in said by-laws for said funerals may be furnished for a much lower cost than forty ($40.00) dollars. No specification of the character or quality of either service or material for the funeral is ever provided in any membership contract or otherwise, unless it be between said common officers of said two organzations, nor is there over designated in the contract or pretended by-laws or otherwise, any person, other than said common officers, who shall have the right on the death of a member to select, contract or demand as to the character or quality of said service or materials, or to require or demand that any funeral whatsoever shall be furnished such deceased member.

Fifth. Defendant, since its incorporation, has been and is transacting said business without having complied with the laws or any law of the state of Ohio regulating the business or insurance within said states.

Wherefore, plaintiff prays that defendant be found and adjudged to have forfeited and surrendered its corporate rights, privileges, powers and franchises, and that it be ousted and excluded therefrom, and that it be dissolved; and that such other relief be granted in the premises as to the court may seem just and proper.

To this petition a short answer is filed, admitting that the association is a corporation and certain other facts, and denying all

the alleged malfeasance and misfeasance charged in the petition.

The case has been·tried to us and very fully argued, and a great many questions have been discussed that have seemed to be involved in the case, but we do not deem it necessary to discuss all these questions.

The association was organized under favor of Section 3631a of the Revised Statutes of Ohio, as amended March 29, 1904, found in Volume 97 of Ohio Laws, page 61, and of the statutes generally upon the subject of corporations not for profit.  The object of the association is to provide for the payment of funeral expenses of the members in an amount not exceeding one hundred dollars for any one member, and the organization of such an association appears to be distinctly sanctioned by Section 3631a in that it provides that certain provisions of law. applicable to insurance companies shall not apply ''to any association formed for the exclusive purpose of providing for the payment of the funeral expenses of the members of such association by assessments upon such members, when the amount of such payment on account of any one member does not exceed the sum of one hundred dollars, and when the membership of such association is limited to the county in which such association is organized.''

It is urged in behalf of the relator that an association of this character is not likely to be beneficial to the members or to the public, and that it ought not to be sanctioned or encouraged by the courts.  We deem it sufficient to say, in answer to that contention, that the express sanction of the Legislature establishes the legality and justifies the existence of the association, and that the courts are not at liberty to undertake to defeat the objects sanctioned by the Legislature, unless it shall appear that the law is unconstitutional.  The wisdom or policy of legislation is a matter submitted by the Constitution to the law-making power.  No doubt an association incorporated in pursuance of this statute may be organized or operated upon a plan which would require a court, upon its action being invoked, to oust the corporation, or to require a modification of its plans; but upon the general doctrine advanced by counsel that no such organization should be permitted to exist, we have no right or authority to undertake to overturn the declared policy of the Legislature.

It is also contended by counsel for the relator that this statute is unconstitutional, in that it confers certain rights upon an association of this character, and relieves it from certain burdens and disabilities, so as to favor it and give it special privileges different from those given to other associations doing similar business. This argument proceeds upon the theory that this is an insurance company, and it is said that because this insurance company is relieved from making certain reports, perhaps the payment of certain taxes to the state (I am not clear about that) imposed upon insurance companies, the law is open to this objection. In the first place, we are not prepared to say that this is an insurance company within the purview of the statutes of our state. Whether it is or not is a question not free from doubt or difficulty. Judging from the digests we have consulted, and without a critical study of the cases, it seems to us that the authorities are not quite in harmony. In *State* v. *Taylor*, 56 N. J. Law, 49 (27 Atl. Rep., 797), it was held that an association organized and doing business on substantially the same lines as those pursued by this association—paying sick and funeral benefits—was not doing an insurance business. And see *State* v. *Railway*, 68 Ohio St., 9, and *P., C., C. & St. L. Ry.* v. *Cox*, 55 Ohio State, 497, holding that certain associations for the aid and relief of railroad employes do not come within the purview of the insurance law. But we think this is not exactly a benevolent association, not distinctly and exclusively that; it has none of the social or fraternal attributes or characteristics that such organizations as the Odd Fellows, the Knights of Pythias and other organizations of that character have. We know that those associations, which are fraternal and benevolent, have sick benefits and have funeral benefits, and I believe it has never been supposed they come within the purview of the law touching insurance companies.

This association seems to us to occupy a sort of middle ground between associations of that character and insurance companies, and to which class it should be finally relegated we are not prepared at this time to say. But, assuming that it is an insurance company, we think it would be competent for the Legislature to provide that a company or association organized upon a mutual

plan and agreeing to do no more than furnish a funeral, the cost of which should not exceed one hundred dollars, or to provide for the payment of funeral expenses to an amount not exceeding one hundred dollars, might be relieved from the requirements of the provisions of Section 3630a to Section 3631, Revised Statutes, inclusive, pertaining to insurance companies, not limited as to amount of benefit. For an insurance company that insures for a practically insignificant amount, the Legislature might well, in its wisdom, relieve from certain burdens imposed upon insurance companies insuring for large or unlimited amounts. And the law is general in its provisions, applicable to the whole state and all the citizens of the state, and all such associations formed within the state.

It is charged, and evidence has been introduced to support the charge, that this association was organized and is being carried on for the profit of another certain corporation confessedly organized and carried on for profit, to-wit, the Toledo Undertaking Company, and that therefore it should not be maintained or sustained as a corporation not for profit. The evidence shows that a short time before this association was incorporated the Toledo Undertaking Company was incorporated and organized; that the latter is a company doing a general undertaking business, and that certain of the officers and stockholders of the Toledo Undertaking Company promoted the incorporation of this association; that they were the incorporators named in the articles of incorporation; that after the organization of this association, a board of trustees of fifteen members of this association was chosen by the incorporators and a large number of those trustees were directors and officers of the Toledo Undertaking Company. The incorporation of this association occurred late in December, 1904. The initial organization was upon the 8th day of January, 1905. The next annual meeting was held upon the 9th day of January, 1906, in pursuance of by-laws adopted, and at that time but little change was made in the personnel of the board of trustees, and it is still composed largely of directors and officers of the Toledo Undertaking Company; and it appears that the course of business of this association has been that a contract was entered into between the board of trustees of this association and the board

of directors of the Toledo Undertaking Company, wherein it was provided that for such funeral as a member would be entitled to, costing not to exceed one hundred dollars, the Toledo Undertaking Company was to receive from this association one hundred dollars; and for such funerals as were to be provided to cost fifty dollars this association was to pay the Toledo Undertaking Company fifty dollars.

We are of the opinion that these facts alone do not amount to an offending against the law by this association, or to such offending as would require the court to oust it from the exercise of its franchises. As before suggested, this association is not, in our opinion, strictly a beneficial organization, and it is clear that the Toledo Undertaking Company is an organization for profit. This association agrees to furnish to its members, or perhaps more properly stated, the members of this association agree among themselves to furnish one another certain funeral benefits, and in the very nature of things, in the carrying out of this provision somewhere along the line, a profit must result to somebody, unless everybody concerned, or everybody dealing with the association, shall be willing to contribute in such a way as that there would be no return of profit.

It is said on behalf of relator that the statute contemplates that certain cash benefits are to be returned to the beneficiaries and from this cash, amounting to no more than one hundred dollars in any case, the beneficiary, or the representatives of the beneficiary, are to be at liberty to go into the open market to provide things needful for the funeral. We do not think that the statute requires this. It seems clear that under this statute it would be competent for this association to furnish the funeral itself, the things needful for the funeral, the service, the properties, the materials, and that if it may do so by providing a stock of such materials, by providing competent employes or servants, necessary equipage, horses, etc., to perform the service, that it may as well do so by employing some independent concern to furnish these things; and therefore if this scheme or plan provided by the contract with the undertaking company is carried on in an honorable, straightforward manner in the interests of the membership, we can not see that the inter-

ests of the members or the public are likely to be so injured or affected as to call upon the court to interfere. Nor do we think that the circumstance that stockholders, directors or officers of the Toledo Undertaking Company are also members of this association and have become trustees and officers of this association, in and of itself, or in connection with the fact that the contract referred to has been entered into between the association and the company is sufficient to require interference at the hands of the court. If, however, it should turn out at any time that this association is merely a subsidiary organization dominated and controlled by the Toledo Undertaking Company, then a different problem would be presented to the court. It is charged that that is so now. We are inclined to think that as the association is at present organized that may result, and therefore we feel it our duty to require at least a modification of the plan of business of this association, and what that shall be I shall discuss more at length presently.

It is charged that there were irregularities and omissions of statutory requirements in the mode of procedure in the organization of this association. We are of the opinion that there were some omissions, some irregularities, but not so vital to the organization or to the association as to require a judgment of ouster. It is apparent that the gentlemen who had the matter in charge proceeded in good faith to attempt an organization upon the lines required by the statutes. Whatever omissions may have occurred were because of inadvertence, not because of any design to evade the requirements of the law, and therefore we think this should be recognized as a *de facto* organization, and that the present board of trustees should be recognized as at least the *de facto* board of trustees, and authority for this is found, we think, in the case of *Bartholomew* v. *Bentley,* 1 Ohio State, 37.

The evidence also indicates that there was a later meeting which purports, according to the records, to have been a meeting of members of the association, and they appear to have ratified this election, though perhaps that was not necessary. Certain so-called by-laws were adopted—the by-laws set forth in the petition. These so-called by-laws are not within the meaning of Section 3250, Revised Statutes, such rules of government as trus-

tees were authorized to adopt, for the trustees or diretors of a corporation may adopt a code of by-laws for their government only, not for the government of the association, and such by-laws must not be inconsistent with the regulations of the corporation or the Constitution and laws of the state, and such by-laws the trustees may change at their pleasure. But the regulations of the association, the fundamental law of the association, subordinate to the Constitution and laws of the state, must be adopted by the members of the association, if a corporation not for profit; and that is provided for in Sections 3251 and 3252 of the Revised Statutes. The incorporators met and proceeded in pursuance of Section 3240, Revised Statutes, to choose a board of trustees consisting of fifteen members. The statute provides that trustees so chosen shall hold until the next annual meeting or until their successors are elected or qualified.

These so-called by-laws are really what the statute contemplates as the regulations. Section 3252 provides that these regulations may cover:

"1st. The time, place, and manner of calling and conducting meetings." That is, the meetings of the association.

"2d. The number of stockholders or members constituting a quorum.

"3d. The time of the annual election for trustees or directors and the mode and manner of giving notice thereof.

"4th. The duties and compensation of officers.

"5th. The manner of election or appointment and the tenure of office of all officers other than the trustees or directors.

"6th. The qualification of members, when the corporation is not for profit."

Now all of these things, or all that are applicable to an association not for profit, are provided for in these so-called by-laws. Manifestly it was not competent for the trustees to adopt such regulations. It is said, however, on behalf of the defendant that these regulations were adopted by the members, but who the members were and how they became members at that time is not apparent to us. Section 3241 provides:

"The subscribers of the articles of incorporation shall cause the same to be copied into a book which they shall provide, and which shall be the property of the corporation; and a person

having the qualifications prescribed by the corporation may become a member by subscribing his name to such copy.''

The articles of incorporation themselves do not indicate what the qualifications of members shall be, and we suppose that it is competent to collect a membership in some way and then allow that membership, in the adoption of regulations, to provide the qualifications of members, and if in the adoption of such regulations they provide qualifications which may exclude some of those who were tentatively members at the time of the adoption of the regulations, the members thus failing in qualification must drop out. These articles of incorporation were not copied into a book and subscribed by the members. Whether that is absolutely essential to the legal organization of a company we are not prepared to say, but it does seem to us clear that in the preliminary organization the books, papers and records of the association should set forth clearly and distinctly who the persons claiming to be members were, who were present, who did in fact adopt the regulations and perfect the organization, and that ought not to be left uncertain or open to doubt, though to us these books leave it so. It is quite uncertain to us whether this membership consisted of anybody else or any other persons than the incorporators and perhaps the trustees that the incorporators had chosen. I do not mean to be understood as saying that they alone might not have constituted a sufficient membership acting as members, if they had at that time become such, to organize the association. But in view of our conclusions in the case I think I will not carry this discussion any further. I will modify what I have said about it appearing that the organization was irregular by stating it in another form, i. e., that it is not apparent to us that the organization was strictly regular. Unless the regulations were properly adopted by the membership the provision found in these so-called by-laws that the annual meeting should be held upon the second Monday of January would not be effective, for the statute provides ''that unless the regulations of the corporation otherwise provide an annual election for trustees or directors shall be held on the first Monday in January of each year,'' and therefore there would be irregu-

larity in the second election because of its not having been held at the time provided by law.

Some question is made here as to whether the annual election must be held upon the first Monday in January, and counsel for the relator undertake to distinguish between the annual election and the annual meeting provided for in the statutes. We think the same thing is intended by both expressions; that is to say, that the annual meeting is the time when the annual election is to occur, though other business may be done at the time of the annual meeting. But a part of the necessary business of the annual meeting is the annual election, and therefore if the association provides for the annual meeting on a date other than the first Monday of January, necessarily the annual election will come upon that other date. The statute appears to us to use the terms in this interchangeable way, or at least to use the term "annual meeting" as including the time of the annual election. For instance, in Section 3240, "a majority of the subscribers of the articles of incorporation formed for a purpose other than profit, may elect not less than five trustees of the corporation who shall hold their office till the next annual meeting," which evidently means the time of the next annual election. And then in Section 3246, "unless the regulations of the corporation otherwise provide, an annual election for trustees or directors shall be held on the first Monday in January of each year; if trustees or directors are, for any cause, not elected at the annual meeting, or other meeting," then it provides what shall be done.

It appears by these so-called by-laws under which the association is operating, that the funds from which to provide these funeral benefits are raised by the collection from the membership of what are called initiation fees and dues. The membership is divided up into three classes. The initiation for one class, Class A, is ten cents and dues eighteen cents a month. The initiation fee for Class B is eighteen cents, and members of Class B pay no dues. The initiation fee for Class C is eighteen cents, and members of this class pay no dues, but they do not participate in the funeral benefits; that is to say, they have no right to a funeral costing one hundred dollars or fifty dollars, or

any other amount, but they are accorded certain privileges in the way of discounts on bills for goods furnished and services rendered.

It is said on behalf of the relator that these provisions for initiation fees and dues do not comply with the statute which provides for such associations and for such benefits as the result of assessments made upon the members and collected from them. The statute authorizes ''an association formed for the exclusive purpose of providing for the payment of the funeral expenses of the members of such association by assessments upon such members,'' etc. It is said that these initiation fees and dues correspond very closely to the fees and premiums required of persons insured in what are called the old line or stock insurance companies, and that they are not assessments. In *State* v. *Fire Assn.*, 42 Ohio State, 555, where the court had under review a statute our Supreme Court, where the court had under review a statute requiring that the funds should be raised by *special* assessments, it was held that members were liable to be specifically assessed, from time to time, to pay losses which occur while they are such; but no member is liable to such assessment to pay losses occurring before he became a member, or which may occur after he ceases to be a member. That was a case of fire insurance under the assessment plan. And in *State* v. *Ins. Co.*, 58 Ohio State, 1, and some other cases decided by our Supreme Court, it is held that life insurance companies based on the assessment plan must, under our statutes, rely for their funds chiefly on post-mortuary assessments, assessments made and collected after the death occurs, after the loss, from the surviving members; and our impression is, from a study of the authorities, that at one time by the statutes of this state upon the subject of mutual life insurance companies or associations that method of assessing and collecting was required. The statute, however, has been modified by a provision authorizing such companies to collect not only for the purpose of paying losses as they shall occur, but for the creation of a fund—I refer to Section 3630, Revised Statutes—which may be accumulated and invested, and that provision was added to Section 3630 by an amendment adopted in 1886, found in Volume 83 of Ohio Laws, at page 161, and whether such strict method of

post-mortuary collections and assessments would be required now may be open to grave doubt. We find no decisions since this amendment of the statute. I am not certain that it was ever required strictly in all cases, and counsel for the relator in his brief handed in yesterday seems to concede that a plan whereby certain stated payments are required of the membership, annual payments or quarterly payments or monthly payments, would not be obnoxious to the statute if a provision by which it should appear that the payments were going to provide a surplus, fewer would be required, or if there were to be a deficit, a greater number would be required, were made a part of the regulations. We think this might be made a part of the regulations subsequently to the adoption of the original plan omitting it, so as to bind the whole membership under the proviso in the regulations that they shall be subject to amendment, but upon that we express no fixed opinion at this time. At all events, if that were done, the regulations and any contract thereunder should distinctly set forth that the right to make such alteration is reserved and that an increased liability thereunder may arise. As these regulations and the contracts thereunder stand they seem to carry an assurance that the amount of the dues will never be increased.

A matter not presented to us by counsel for the relator has seemed to us worthy of much consideration, *i. e.*, a question touching the qualification of members. By the rules adopted, those persons known in law as infants may become members of this association—persons incompetent to contract, not *sui juris*. It is provided in Article VIII as to membership that the members shall be divided into three classes, namely, Class A, Class B and Class C. Class A shall include persons in good health between the ages of ten years and sixty years; Class B shall include children in good health between the ages of one and ten years; and Class C shall include persons over sixty years of age. Then Article IX provides as to the initiation fees and dues. The initiation fee for Class A shall be ten cents, and dues shall be eighteen cents per month, payable on the first day of each month, and unless paid on the first day of each month said member shall be in arrears. The initiation for Class B shall be eighteen cents, but there shall be no dues paid in this class. It is necessary, how-

ever, that parents or guardians be members of Class A before their children are entitled to membership in Class B. The initiation for Class C shall be eighteen cents, and there shall be no dues paid in this class.

Article X.—Funeral Benefits. The members of Class A in good standing at time of death shall be provided a funeral, consisting of embalming, professional services, casket and outside box, suit or robe and funeral car, to the value of one hundred dollars.

Members of Class B, whose parents or guardians are in good standing in Class A, shall at death be entitled to a funeral to the value of fifty dollars as shown in Class A.

Members of Class C shall at death be entitled to a discount of twenty per cent. on their funeral bill.

Now, it has seemed to us that the Legislature did not contemplate that an association of this character might be organized and carried on by children. I quote from Clark & Marshall on Private Corporations, page 127: "Unless expressly permitted by statute, an infant can not become one of the incorporators in forming a corporation, for at law he is incapable of making a binding contract. Infants need not be expressly excluded by the statute, for it will be presumed that the Legislature in authorizing persons to form a corporation contemplated such persons only as are *sui juris*." And we think that in providing for membership in an association, where the members are in control, where the members formulate and direct the policy of the association, the statute contemplates that they shall be persons competent to contract—not necessarily persons entitled to exercise the elective franchise, but persons who are presumed in law to be capable of entering into ordinary contractual relations and assuming contractual obligations.

The only case to which our attention has been brought that appears to be directly in point is the case of *The Chicago Mutual Life Indemnity Association et al* v. *George Hunt, Attorney-General*, found in Volume 127 of the Illinois Reports, at page 257, and this does not support our views upon this question at all, but it is directly opposed thereto. This was an action to oust the association from the exercise of its franchise and one of the

charges relied upon was that minors were members. I shall read from the opinion at page 276, as follows:

"One of the charges upon which considerable stress is laid and upon which the court below found in favor of the Attorney-General is that of admitting minors to membership.

"The statute requires that the certificate of association shall state, among other things, 'the limits as to age of applicants for membership,' and in pursuance of that requirement, the certificate of association in this case, which was submitted to and approved by the auditor and by him transmitted to the secretary of state and upon which the latter issued the certificate of organization, provided that 'no person shall become a member who is under ten or over seventy years of age.' It appears from the evidence and the defendants' admissions that, of about six hundred members belonging to the association, something over sixty were admitted under the age of twenty-one years, some of them being but little past the minimum age. Was their admission unlawful?

"The statute under which the association was organized is silent on the subject, nor do we find any statute which either expressly, or, so far as we can discover, by implication, either permits or forbids their admission to membership. If then minors are ineligible, such ineligibility arises from some principle growing out of the nature and objects of these associations, or the policy of the law applicable thereto.

"The contention is, that the certificate of membership is a personal contract between the member and the association, and that, as an infant is capable of making only a voidable contract, his admission to membership is a violation of those principles of mutuality which lie at the basis of mutual benefit societies. We may admit in the broadest sense that these societies are founded upon the principle of entire mutuality in relation to burdens as well as benefits, yet we are unable to see how that principle places the membership of infants upon any footing different from that of adults. While the certificate of membership is a contract, such a contract, in the absence of express stipulations to the contrary, is purely unilateral. It may be enforced against the association where the member has performed all the prescribed conditions, but none of its stipulations are enforcible against the member. If he fails to pay his assessments or dues, or does any act forbidden by the certificate of membership, the certificate becomes void and the membership ceases. But the making of an assessment or the maturing of dues does not make the member a debtor to the association, so as to authorize it to bring

a suit for its recovery in case of his neglect or refusal to pay. Payment is left wholly to his discretion. The contract then not being one which has the legal effect of binding him to the payment of any money or the performance of any condition, we can not see how it can be at all important whether it is voidable or otherwise. Performance is no more left to the option of the member where the contract is made by an infant then when made by an adult. If an infant performs the conditions prescribed in the certificate, he, the same as an adult, becomes entitled to the benefits thereby secured. If he fails to perform, his membership ceases, and that is all. We do not assent to the view that, as a further consequence of his disability, he may recover back the dues and assessments he may have already paid.

"Nor are we able to see any force in the suggestion that minors should not be admitted to membership because of their incapacity to act as trustees, or to perform the duties of members at corporate meetings, such as consulting or giving advice for the mutual benefit of the members, voting for officers and the like. We know of no reason why the capacity to act as trustee should be a necessary qualification for membership. If a sufficient number of members possess the requisite capacity, so as to afford the members a reasonable and proper range of choice in the selection of trustees, the admission of others who are not thus qualified can work no injury to anybody. It will not be claimed that the want of the requisite intelligence or business experience on the part of an adult to qualify him to act as trustee would render him ineligible to membership, but these are quite as essential to the proper discharge of the duties of trustee as mere legal capacity. There would seem to be no legal obstacle in the way of minors taking part in corporate meetings, consulting, advising or even voting. The only objection to their doing so grows out of their inexperience and the immaturity of their judgments, but these are disqualifications which are not necessarily confined to persons under the age of twenty-one years, and no one would allege them as a legal bar to the admission of an adult to membership."

We have to say that that reasoning does not satisfy us. In this decision, the court seems to overrule a judge who is regarded as one of the ablest equity judges of the country, Judge M. F. Tuley, of the Circuit Court of Cook County, Illinois, and what the judge delivering this opinion has said here is entitled to less weight as a decision than it would otherwise have, from the circumstance that it was unnecessary to the decision. The decision

made by Judge Tuley ousting the corporation was affirmed by this court, and the court is simply proceeding to say that they do not regard this particular charge as having been sustained.

It is said that the mere inexperience of an adult, or the mere lack of capacity of an adult, would not be a disqualification. Generally, perhaps, that is true; and yet that is not always true. Incapacity may arise to a degree that would render the adult incapable or ineligible; in other words, it would hardly do to organize an association of this character at the insane asylum from the members thereof. If the adult were shown to be *non compos mentis* no doubt he would be ineligible to membership. And an infant is presumed and regarded in law as without capacity to contract or manage his own business or affairs. The legal disability is laid upon an infant for that reason; and if we are to admit infants, where is the line to be drawn, or how can any line be drawn? Here, one class is made up of infants ranging between the age of one year and ten years. Another class, a part of Class A, is made up of infants ranging between the ages of ten years and twenty-one years. If it is competent for an association to organize with classes of that description, it is competent for an association to be organized with no other membership than persons of that description. It would be competent, then, to organize burial asociations of this character made up of infants between the ages of one year and ten years, or, if you please, between the ages of one year and twenty-one years. Surely the Legislature could not have contemplated anything that would operate so absurdly and so disastrously to the interests of all concerned as that. And it will not do to say that there may be enough adult members of business capacity to take care of the interests of the infants, for the reason that these infants are members, with like rights and privileges in the association as the adults. They have the same right to vote; they have the same right to hold office; they have the same right to be trustees. It would be different if this statute provided that guardians or parents might become members of the association on behalf of their wards or their children, and so manage their affairs and provide for their burials. But it does not. The statute provides for a membership of persons who are to participate in the business of

the association and who are to have the funeral benfits; but no others are to have the funeral benefits than the members and all the members have a right, each and every one of them, to participate in the business of the association.

We must draw a line somewhere; it will not do to say that infants in arms, sucking babes, can become members of a legal organization of this kind, with the right of franchise and the right of management. And if we are to draw the line we think the logical, the reasonable, and the legal basis of that line is to be at majority.

I have already intimated our opinion that the funeral benefits are confined to the membership, and we think that the funeral benefits must be confined to the contributing members, those who pay by assessment, whether that assessment be in the form of dues or in some other form; and while it might be very laudable for the young, healthy and well-to-do to organize for the burial of the old people, or those in poverty, this statute does not provide for that. This statute contemplates mutuality in the matter of benefits and in the matter of burdens. And that brings me to a consideration of Class C. Class C, as I have shown by reading from the by-laws, is made up of persons over sixty years of age. They pay an initiation fee of eighteen cents. They pay nothing thereafter; nothing more. It is said that no harm results from this, because the fund raised by assessments upon the others, or by the dues paid by the others, does not contribute to the expense of the burial of the members of this aged class, and that is apparently true. But the statute does not provide for such a class. The statute does not provide for this form of benevolence. The statute only authorizes an association made up of members and for one providing ''for the payment of the funeral expenses of the members of such association by assessment upon such members,'' which means *all* the members. And we think that it is not competent to provide for a class who shall not contribute or provide for their funerals, either out of a fund provided by others or in any other way.

While, as I say, such benevolence may be a laudable thing, while it may be beneficial in some of its aspects, it is not a thing on account of which persons may become incorporated under the laws

of the state; it has not the sanction of this statute as one of the purposes of an incorporated company. If people desire to act together as an unincorporated association to do business of that sort, we can not see why the business should be interfered with or why it would not be most praiseworthy, and the same would be true of an incorporated company if authorized by law. These persons in Class C are members, made members by the by-laws, and when the membership meets to amend their by-laws the members of Class C may take a notion to provide differently as to the source from which the expenses of their funerals is to come. They have the same right to vote in the election of trustees and in determining the management that the others have. But we need not anticipate such difficulties to justify our conclusion.

As to infants in Class B, that is, those between the ages of ten years and twenty-one years there is the objection that they are not only disqualified because of non-age, but the further objection that they are members who pay no dues and yet participate in the fund raised by the contribution of the dues of others, and we think the statute contemplates, when it says that such funds are to be raised by assessments "upon such members" that it is to be an assessment upon all the members. There may not be a class the members whereof shall be excused from contributing.

This court discovers no reason to doubt the honesty or good faith of the gentlemen who have been trying to forward this enterprise. They have been operating in a new field. They have been blazing the way, and it is rather to be expected that mistakes would occur. There may have been some others, that the court has not pointed out, but we have indicated those that we regard as serious.

We do not feel disposed to oust this corporation from the exercise of its franchises without giving it an opportunity to undertake to correct these errors; by reorganizing upon a new and acceptable plan. It is not for this court to undertake to formulate a plan. We might, and very likely would, make mistakes as grievous as those that were made by the gentlemen who did undertake it. It is only for us to consider the plan after it is formulated, and we have to deal now with the plan that is exhibited to us here and none other.

· The decree will oust the corporation to this extent: First. It will require that Class C must be dropped, because the funerals are not paid for by assessments on such members, as provided by the statute. Second. It will provide that Class B must be dropped, because the funerals of persons in that class are not paid for by assessments on all members, and also because infants are not qualified by law for membership. Third. All of Class A who have not attained their majorities must be dropped because not qualified by law for membership. Fourth. The election of trustees must be set aside, because persons not qualified by law were part of the elective body. That statement is based upon the assumption that all of the membership participated in the election as they had a right to do. Notice must be given as required by statute, to the remaining members, calling them together to elect trustees and to adopt a code of regulations. These regulations must provide for raising funds for funeral benefits by assessments on all members, and for funeral benefits to none but contributing members. Whether the present plan of monthly dues meets the requirements of the statutes as to assessments or is obnoxious to the objection that it does not provide for an equitable pro rata distribution of burdens, or may result in a deficit or a surplus in contravention of law, is not decided, since the new plan to be adopted may be upon different lines; nor is it determined whether medical examination or other means of assuring a membership with reasonably sound bodies and good health and ordinary expectancy of life at their respective ages shall be required, for the same reason. That is to say, the new plan may obviate this inquiry.

All costs will be adjudged against the defendant.

I should add that when these members are brought together for the initial organization (for it will amount to that now), some plan should be devised, either by the members signing the book containing the articles of incorporation or otherwise, by which a definite record shall be made of the membership present and participating in the business of the association.

*Lyman W. Wachenheimer*, Prosecuting Attorney, and *Denman & Crane*, for relator.

*J. P. Hanley*, for defendant.